IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

PATRICK LOWTHER, individually )   CIVIL NO. 13-00235 LEK-BMK
and on behalf of all others   )
similarly situated,           )
                              )
          Plaintiffs,         )
                              )
     vs.                      )
                              )
U.S. BANK N.A. and DOE        )
DEFENDANTS 1-50,              )
                              )
          Defendants.         )
_____)


**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S
MOTION TO DISMISS COMPLAINT FILED ON APRIL 4, 2013**

On May 31, 2013, Defendant U.S. Bank National

Association as Trustee under Pooling and Servicing Agreement

Dated as of December 1, 2006 MASTR Asset Backed Securities Trust

2006-HE5 Mortgage Pass-through Certificates Series 2006-HE5

("Defendant" or "U.S. Bank"), filed its Motion to Dismiss

Complaint Filed on April 4, 2013 ("Motion"). [Dkt. no. 9.]

Plaintiff Patrick Lowther ("Plaintiff") filed his memorandum in

opposition on July 22, 2013, and Defendant filed its reply on

July 29, 2013. [Dkt. nos. 18, 19.]

The Court finds this matter suitable for disposition

without a hearing pursuant to Rule LR7.2(d) of the Local Rules of

Practice of the United States District Court for the District of

Hawai`i ("Local Rules"). After careful consideration of the

Motion, supporting and opposing memoranda, and the relevant legal

authority, Defendant's Motion is HEREBY GRANTED IN PART AND
DENIED IN PART for the reasons set forth below.

<u>BACKGROUND</u>

On April 4, 2013, Plaintiff filed this purported class
action against Defendant in state court.  [Notice of Removal,
filed 5/14/13 (dkt. no. 1), Exh. 1 ("Complaint").[1]]   On
May 14, 2013, Defendant removed the instant action to this
district court.  [Dkt. no. 1.]

Plaintiff owned real property located at 74-5058 Huaala
Street, Kailua-Kona, Hawai`i (the "Property").  [Complaint at
¶ 19.]  The Complaint asserts that, on or about July 13, 2006,
Plaintiff executed a loan in favor of New Century Mortgage
Corporation ("New Century"), secured by a mortgage ("Mortgage")
on the Property.  On or about July 25, 2006, the Mortgage was
recorded in the State of Hawai`i Bureau of Conveyances ("BOC") by
or on behalf of New Century, as Document No. 2006-135170.  [<u>Id.</u>
at ¶¶ 7, 19, 21.]


The Complaint alleges that New Century and Home 123
Corporation ("Home 123")[2] engaged in lending to sub-prime

---

[1] This case is a putative class action, but no class has
been certified to date.

[2] The Court notes that New Century and Home 123 are not
named parties to the instant action.  The allegations Plaintiff
makes regarding Home 123 appear to be on behalf of the other
(continued...)

borrowers in Hawai`i, and were subsidiaries or divisions of New Century Financial Corporation, subsequently known as New Century TRS Holdings, Inc.  On or about April 2, 2007, all three entities initiated bankruptcy proceedings in the State of Delaware, and the bankruptcy court order appointed a trustee in liquidation ("Trustee"), effective August 1, 2008.  Thus, Plaintiff alleges that "[f]rom and after August 1, 2008, no person or entity other than the Trustee had any power to transfer, assign, convey or otherwise dispose of any asset, title or interest, legal or equitable of Home 123 or New Century."  [Id. at ¶¶ 7, 22-24.]

Plaintiff alleges that, on or prior to February 18, 2009, Defendant caused the execution of an assignment of the Mortgage and related note ("Note") from New Century to U.S. Bank ("Assignment").  Plaintiff alleges that the Assignment "was signed purportedly on behalf of New Century by a person who was in fact an agent of U.S. Bank who falsely claimed to be authorized to sign on behalf of New Century."  [Id. at ¶ 25 (citing Complaint, Exh. 1).]  At the time Defendant accepted Assignment, it knew that only the Trustee had authority to transact business on behalf of New Century, and that those executing the Assignment had no such authority.  Plaintiff therefore alleges that Defendant executed the Assignment in

_____

²(...continued)
members of the putative class.

3

violation of Haw. Rev. Stat. § 708-852(1).[3]  On February 24,
2009, Defendant recorded the Assignment in the BOC, as Document
No. 2009-027272.  Defendant subsequently commenced a non-judicial
foreclosure of the Property pursuant to Haw. Rev. Stat. § 667-5,[4]
and the foreclosure sale took place on April 30, 2009.  [Id. at
¶¶ 27, 29-32.]  Plaintiff alleges that Defendant used the
"unauthorized, improper, void *ab initio*, unfair and deceptive"
Assignment in order to:

>       (a)  Purportedly establish U.S. BANK as a
> mortgagee qualified to use the non-judicial
> foreclosure procedure;
>
>       (b)  Purportedly create an unfair and
> deceptive "chain of title" in the official state
> records which would purportedly show U.S. BANK as
> having the ability to convey title by virtue of
> the foreclosure;
>
>       (c)  Unfairly and deceptively give the
> published notice of foreclosure sale required by
> Chapter 667 an appearance of having been published
> by an entity with the legal right and title to

---

[3] Haw. Rev. Stat. § 708-852(1) provides:

>  A person commits the offense of forgery in the
>  second degree if, with the intent to defraud, the
>  person falsely makes, completes, endorses, or
>  alters a written instrument, or utters a forged
>  instrument, or fraudulently encodes the magnetic
>  ink character recognition numbers, which is or
>  purports to be, or which is calculated to become
>  or to represent if completed, a transfer,
>  terminate, or otherwise affect a legal right,
>  interest, obligation, or status.

[4]  Although in effect at the time of Defendant's foreclosure
of the Property, Haw. Rev. Stat. § 667-5 was repealed effective
June 28, 2012.  See Haw. Sess. Laws 2012, ch. 182, § 50.

foreclose; and/or

(d)  Conceal or obscure defects or the existence of other entities in the chain of title from New Century or Home 123 by which U.S. BANK might otherwise have been required to claim ownership of the notes and/or mortgages of the right to foreclose.

[Id. at ¶ 32.]

Plaintiff asserts that he is a "consumer" within the meaning of Haw. Rev. Stat. § 480-1, and that he is entitled to damages under § 480-13.  [Id. at ¶ 39.]  Plaintiff therefore alleges a claim for unfair and deceptive practices within the meaning of Haw. Rev. Stat. Chapter 480 ("UDAP" or "Count I"), based on:  the fact that Defendant lacked authority from New Century and the Trustee to execute the Assignment; [id. at ¶¶ 25, 27;] the fact that Defendant's execution of the Assignment was in violation of § 708-852(1); [id. at ¶ 30, 32, 34;] Defendant's preparation, receipt, and use of the Assignment of the Mortgage and Note; [id. at ¶ 28;] Defendant's act of recording the Assignment in the BOC; [id. at ¶ 29;] and Defendant's "knowing use and recordation" of the Assignment to cause the foreclosure sale of the Property [id. at ¶ 34.].  Plaintiff also asserts that, based on the Complaint's allegations of Defendant's conduct, Defendant is liable to Plaintiff for:  wrongful foreclosure of the Property ("Count II"); intentional interference with prospective economic advantage ("Count III"); and trespass ("Count IV").  [Id. at ¶¶ 32, 34, 36, 37.]

5

Plaintiff seeks the following relief:  actual damages; reimbursement of costs and expenses under Haw. Rev. Stat. Chapter 480, including attorneys' fees; treble damages as provided by law; prejudgment interest; punitive damages; declaratory relief stating that the Assignment is null and void; equitable and injunctive relief to impose a constructive trust on the Property and monies obtained by Defendant through the use of the Assignment; equitable and injunctive relief to enjoin Defendant from "using, asserting or relying on any assignment from New Century or Home 123, executed after August 1, 2008, that is not executed by or with the express authorization of the Trustee in bankruptcy[;]" and any other appropriate relief.

I.    **Motion**

Defendant filed its Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, and asserts that the Complaint fails to state a claim upon which relief can be granted.  [Motion at 1-2.]  At the outset, Defendant contends that all claims contained in the Complaint are time-barred. Defendant argues that, because the defects in the Complaint cannot be remedied by an amendment, the Complaint should be dismissed with prejudice.  [Mem. in Supp. of Motion at 2.]

A.    **Count I - UDAP**

Defendant argues that Count I is time-barred under the

6

applicable four-year statute of limitations.  Defendant contends that the statute of limitations for UDAP claims, pursuant to Haw. Rev. Stat. § 480-24(a) and the relevant case law, "begins to run from the date of the occurrence of the violation, not the date of discovery."  [Id. at 5-6 (some citations omitted) (citing Haw. Rev. Stat. § 480-24(a); Teaupa v. U.S. Nat'l Bank N.A., 836 F. Supp. 2d 1083, 1099-1100 (D. Hawai`i 2011)).]

According to Defendant, the allegations supporting Count I are based upon Defendant's act of executing the Assignment.  Defendant argues, therefore, that Count I accrued on the date Defendant allegedly executed the Assignment, February 18, 2009.  Applying a four-year limitations period, Defendant contends that Plaintiff would had to have brought Count I before February 18, 2013.  [Mem. in Supp. of Motion at 6-7 (citing Complaint at ¶¶ 25, 28, 29, 32).]  Because Plaintiff did not file his the Complaint until April 4, 2013, and does not offer any justification for equitable tolling of the statute of limitations, Defendant argues that Count I is time-barred and should be dismissed with prejudice.  [Id. at 7.]

B.   **Plaintiff's Other Claims**

Defendant appears to categorize Counts II, III, and the Complaint's other allegations, as tort claims.[5]  Defendant notes

---

[5] Defendant's Motion does not address Count IV, regarding Defendant's alleged trespass.

that the Complaint repeatedly alleges claims for "wrongful

foreclosure" and "unclean hands/tortfeasor conduct against public

policy." Defendant argues that this Court has previously held

that Hawai`i courts do not recognize a common law cause of action

for wrongful foreclosure. [Id. (quoting Valencia v. Carrington

Mortg. Servs., LLC, Civil No. 10-00558 LEK-RLP, 2013 WL 375643,

at *6 (D. Hawai`i Jan. 29, 2013)).] Defendant further argues

that there is no cause of action for "unclean hands" or

"tortfeasor conduct against public policy," and that the former

is only an affirmative defense. Defendant contends that, on this

basis alone, these tort claims should be dismissed. [Id.

(citations omitted).]

        Defendant next argues that Count III also fails on its

face. Defendant asserts that, in order to state an intentional

interference claim,

> a plaintiff must allege facts showing: (1) the
> existence of a prospective business relationship
> sufficiently definite and specific such that there
> is a reasonable probability of it coming to
> fruition[;] (2) knowledge of the relationship;
> (3) a purposeful intent to interfere with the
> relationship; (4) causation between the act of
> interference and the impairment of the
> relationship; and (5) actual damages.

[Id. at 8 (citing Meridian Mortg., Inc. v. First Hawaiian Bank,

109 Hawai`i 35, 47-48, 122 P.3d 1133, 1146-47 (App. 2005)).]

Defendant argues that: Plaintiff does not identify the existence

of a business relationship; the Complaint fails to allege that

8

Defendant had knowledge or a purposeful intent to interfere with
any such purported business relationship; and that the "intent"
element of an intentional interference claim "denotes
purposefully improper interference and requires a state of mind
or motive more culpable than mere intent." [Id. (internal
quotation marks omitted) (quoting Hawaii Motorsports Inv., Inc.
v. Clayton Grp. Servs., Inc., CIV. No. 09-00304 SOM/BMK, 2010 WL
3398553, at *15 (D. Hawai`i Aug. 27, 2010)).] Defendant asserts
that, because the Complaint fails to allege any of the requisite
elements, Count III is inadequately pled and should be dismissed.

Finally, Defendant argues that Plaintiff's purported
tort claims are untimely. Defendant asserts that, under Hawai`i
law, tort claims are subject to a two-year statute of
limitations, pursuant to Haw. Rev. Stat. § 657-7.[6] According to
Defendant, Plaintiff's alleged tort claims would have accrued
when he discovered, or could have discovered, the tortious act of
which he is complaining, the damage, and the causal connection
between the two. [Id. at 8-9 (quoting Ass'n of Apartment Owners
of Newtown Meadows v. Venture 15, Inc., 115 Hawai`i 232, 277, 167
P.3d, 225, 270 (2007)).]

Defendant refers to the Complaint, where Plaintiff

---

[6] Haw. Rev. Stat. § 657-7 provides: "Actions for recovery
of compensation for damage or injury to persons or property shall
be instituted within two years after the cause of action accrued,
and not after, except as provided in section 657-13."

concedes that:  on or about April 2, 2007, New Century initiated bankruptcy proceedings, which are a matter of public record; the Assignment became a matter of public record on February 24, 2009; the Foreclosure Notice became a matter of public record on March 16, 2009; and the foreclosure sale of the Property occurred on April 30, 2009.  [Id. at 9 (citing Complaint at ¶¶ 23, 25, 32).]  Based on the foregoing, Defendant argues that all of the information necessary for Plaintiff to allege the tort claims set forth in the Complaint would have been in Plaintiff's possession, or available to him, on April 30, 2009, at the very latest. Defendant therefore contends that April 30, 2011 would have been the last day on which Plaintiff could have brought his tort claims against Defendant.  Because Plaintiff did not file the instant action until April 4, 2013, Defendant argues that Counts II, III, and any other of Plaintiff's tort claims are time-barred and should be dismissed with prejudice.  [Id. at 9-10.]

In conclusion, Defendant urges the Court to dismiss the Complaint in its entirety and with prejudice.

## II.  Memorandum in Opposition

At the outset, Plaintiff notes that, in the face of a motion to dismiss, he does not need to present declarations or exhibits, and the facts alleged in the Complaint are accepted as true.  Plaintiff further notes that a court may take judicial notice of matters of public records, which a court may then

10

properly consider on a motion to dismiss.  Plaintiff attached

several exhibits to his memorandum in opposition.  Because the

attached exhibits are matters of public record, Plaintiff

requests that the Court take judicial notice of the exhibits.

[Mem. in Opp. at 3 & n.2; id., Decl. of James J. Bickerton

("Bickerton Decl.").]

A.   Count I - UDAP

Plaintiff argues that a UDAP is not complete until the

objective of the actor is obtained, and the alleged injury

actually occurs.  Plaintiff therefore contends that Count I did

not accrue until Defendant took title to and possession of the

Property.  [Id. at 1, 4, 7, 14-15.]  Plaintiff asserts that

Defendant's Motion avoids the "real issues" in the instant case,

which Plaintiff argues are:

> (1) if a false or deceptive or unfair act occurs
> as part of an overall plan to acquire the
> plaintiff's property, when does the claim accrue?
> (2) Given that actual injury is an element of a
> [UDAP claim], can the claim accrue before the
> required element of injury occurs?  (3) What is
> the effect of the language in Section 480-24
> providing that in cases of "continuing violation"
> of the UDAP claim accrues at any time during the
> period of continuing violation?

[Id. at 13 (footnote omitted).]

Plaintiff then appears to address arguments that he

anticipates Defendant will make in its reply.  Plaintiff argues

that Defendant is not permitted to move to dismiss on

inapplicable grounds and then present its real arguments for the

11

first time in the reply, as such a procedure would deny Plaintiff
due process.  Plaintiff asserts, therefore, that Defendant cannot
include any new arguments in its reply that it did not already
raise or rely on in its Motion.  According to Plaintiff, the only
arguments Defendant presented for dismissal of the UDAP claim are
that:  Count I accrued on the date it filed the Assignment in the
BOC; and no equitable tolling or "discovery" rule is available,
meaning that any claim Plaintiff filed after the four-year
anniversary of the Assignment's filing date would be untimely.
[Id. at 13-14.]

          Plaintiff focuses on a provision in Haw. Rev. Stat.
§ 480-24(a) that states, "[f]or the purpose of this section, a
cause of action for a continuing violation is deemed to accrue at
any time during the period of the violation."  Plaintiff argues
that a UDAP claim cannot accrue until all of its elements exist,
and that an essential element of a UDAP claim is injury.
Plaintiff argues, therefore, that Count I accrued when
Defendant's purportedly false filing of the Assignment in the BOC
caused the injury that Plaintiff alleges.  Plaintiff argues that
his alleged injury is not Defendant's filing of the Assignment,
but the loss of the Property that the filing subsequently caused.
[Id. at 14-15 (citations omitted).]

          Plaintiff argues that, even if Defendant's filing of
the Assignment in the BOC caused actual injury, such an act

12

intended to obtain the Property constitutes a "continuing violation" under § 480-24(a).  Plaintiff relies on <u>Anzai v. Chevron Corp.</u>, 168 F. Supp. 2d 1180 (D. Hawai`i 2001), and states that "a plaintiff who 'provides a "continuing violation," . . . would be entitled to seek provable damages that might have occurred prior to the four years before the suit was filed, if the continuing violation occurred during that period.'"  [<u>Id.</u> at 15 (quoting <u>Anzai</u>, 168 F. Supp. 2d at 1187).]  Plaintiff argues that Count I is based on Defendant's entire scheme to take the Property by using the Assignment it filed, not merely Defendant's act of filing.  Plaintiff contends that Defendant's scheme was not complete until Defendant purchased the Property at the foreclosure sale, the date of which is within the four-year statute of limitations period preceding the filing of the Complaint.  Plaintiff argues that, even assuming, *arguendo*, Defendant's act of filing the Assignment in the BOC is the original violation, this violation continued until the foreclosure sale.  [<u>Id.</u> at 8, 15-16 (citing Bickerton Decl., Exh. 1).]

In support of his argument of a continuing violation, Plaintiff notes that Defendant's scheme to deprive Plaintiff of the Property would not have been furthered if, after filing the Assignment with the BOC, Defendant had filed a document to withdraw or cancel the recordation of the Assignment.  Plaintiff

argues that this demonstrates that the continued existence, not the mere filing or execution, of the Assignment in the BOC effected and aided the foreclosure process.  Thus, Plaintiff asserts, Count I did not accrue until Defendant purchased the Property at the foreclosure sale on April 30, 2009.  [Id. at 16.]

Although Plaintiff notes that elements of fraudulent concealment are present in this case, Plaintiff does not need to resort to "tolling" provisions regarding such concealment. Plaintiff also notes that he does not rely upon the argument that a "discovery" rule is applicable.  Plaintiff asserts, therefore, that Defendant's arguments based on these points are "straw men," and that his UDAP claim accrued when the Assignment "completed its mission and title to the [Property] was transferred to U.S. Bank."  [Id.]

Plaintiff argues that the cases Defendant relies on mainly concerned whether there was equitable tolling or a "discovery" rule, and are only relevant to the instant case to the extent that those courts recognized that a UDAP claim is not complete until the transaction in question is finalized.  [Id. at 17 (other citations omitted) (citing Teaupu, 836 F. Supp. 2d at 1099-1100).]  Plaintiff contends that, construing the Complaint's allegations in his favor, Plaintiff could prove facts to show Defendant's continuing violation, which began at or before it recorded the Assignment in the BOC, and continued until the

transfer of title at the foreclosure sale.  [Id. at 8, 18.]

        Plaintiff states, "[a] continuing violation is 'a
continuing pattern of related improper conduct.'"  [Id. at 18
(quoting Au v. Republic State Mortg. Co., Civil No. 11-00251
JSM/KSC, 2013 WL 1339738, at *13 n.24 (D. Hawai`i Mar. 29,
2013)).]  Plaintiff asserts that he has alleged a pattern and
course of conduct on the part of Defendant, which began with its
recording of the Assignment and ended with the conclusion of the
foreclosure proceedings on the Property based on the Assignment.
Plaintiff argues that, construing the allegations of the
Complaint in his favor, Defendant has not met its burden of
showing that the Complaint is untimely because it was not filed
within four years of Defendant's continuing UDAP violation.
Plaintiff asserts that, pursuant to § 480-24(a), Count I accrued
on or after April 30, 2009, and Plaintiff may recover all damages
relating to Defendant's continuing violation, including those
that might have occurred prior to the four years before the
Complaint was filed.  [Id. (quoting Anzai, 168 F. Supp. 2d at
1187).]

        Plaintiff asserts that, even if the Court is unwilling
to extend the statute of limitations period to damages that
occurred prior to April 30, 2009, Count I is not time-barred to
the extent that it seeks to recover damages relating to the
foreclosure itself.  Plaintiff argues that this district court

15

has previously held that, "in the event of continuing wrongful conduct, those damages that flow from an act undertaken within the limitation period are certainly recoverable even if other related claims are time-barred."   [Id. at 19 (citing Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc., 491 F. Supp. 1199, 1228 (D. Hawai`i 1980), aff'd, 732 F.2d 1403 (9th Cir. 1984)).]

Plaintiff notes Defendant's argument that Count I is time-barred because the first wrongful act the Complaint alleges occurred prior to the limitation period.  Plaintiff asserts that Defendant's argument is not only inconsistent with § 480-24(a), but also with federal law, as pronounced in Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321 (1971).  According to Plaintiff,

> Zenith involved a 1963 suit to recover damages for an anti-trust conspiracy that took place prior to 1954.  The Supreme Court held that, to the extent the earlier conspiracy caused damages that occurred within four years of the filing date which could not have been recovered at the time of the original wrongful act, a claim to recover those 1959-63 damages was not barred by the antitrust statute of limitations.

[Id. (citing Zenith, 401 U.S. at 340-42, 91 S. Ct. at 807-08).]

Plaintiff contends that, based on Zenith, this district court, in Robert's Waikiki, previously rejected the argument that Defendant now makes.  [Id. at 20-21 (quoting Robert's Waikiki, 491 F. Supp. at 1228).]  Plaintiff asserts that, pursuant to

16

Zenith and Robert's Waikiki, because "the damages relating to foreclosure were clearly too speculative at the time of the wrongful foreclosure, the cause of action for those damages clearly did not arise until the foreclosure occurred."  Plaintiff therefore maintains that, under any interpretation of § 480-24(a), Count I is not time-barred.  [Id. at 21.]

Plaintiff refers to Defendant's reliance on McDevitt v. Guenther, 522 F. Supp. 2d 1272 (D. Hawai`i 2007), for its proposition that damages occurring within the limitation, as a result of a wrongful act that occurred prior to the limitation period, are time-barred.  In opposition, Plaintiff argues that McDevitt is distinguishable in that the damages in the instant case flowed at least in part from Defendant's wrongful acts that occurred within the limitations period.  According to Plaintiff, the McDevitt court cited the Zenith court's analysis, but failed to apply Zenith's main holding.  Plaintiff argues that the rule in Zenith is not about the application of the "discovery" rule, but concerns whether a claim even exists after applying the statute of limitations.  [Id. at 21-22 (citation omitted).]

B.    **Plaintiff's Other Claims**

1.    **Count II - Wrongful Foreclosure**

Plaintiff argues that Defendant is incorrect in its assertion that Count II should be dismissed because Hawai`i law does not recognize such a claim.  Plaintiff notes that the Ninth

Circuit has cautioned that the label given to a plaintiff's cause of action is not dispositive if the facts show a basis for recovery.  [Id. at 22 (citing Sagana v. Tenorio, 384 F.3d 731, 736-37 (9th Cir. 2004)).]  Plaintiff argues that, assuming the factual allegations in the Complaint are true, it states a basis for recovery under Hawai`i law, independent of Count I.  [Id.]

Plaintiff argues that, contrary to Defendant's assertion, the Valencia court actually addressed the issue of whether Hawai`i law recognizes the tort of attempted wrongful foreclosure.  According to Plaintiff, the Valencia court noted that there had been no foreclosure of the subject property, and that, in other jurisdictions, substantive wrongful foreclosure claims are typically available after foreclosure.  [Id. at 23 (quoting Valencia, 2013 WL 375643, at *6).]  Plaintiff argues that Hawai`i law does, in fact, recognize a cause of action for wrongful foreclosure.  [Id. (some citations omitted) (citing Johnson v. Tisdale, 4 Haw. 605 (1883); Billete v. Deutsche Bank Nat'l Trust Co., Civil No. 13-00061 LEK-KSC, 2013 WL 2367834, at *7 (D. Hawai`i May 29, 2013)).]

Plaintiff anticipates that, in its reply, Defendant will argue that a plaintiff has no claim for wrongful foreclosure unless he pleads and proves that he tendered the amount due under the mortgage.  Plaintiff argues, however, that the tender requirement does not apply in cases, such as this one, where the

18

foreclosure sale is void, rather than merely voidable.  [Id. (citation omitted).]

Plaintiff refers to Defendant's assumption that the allegation of Defendant's "unclean hands/tortfeasor conduct against public policy" purports to state a separate claim.  [Id. at 24 (citing Mem. in Supp. of Motion at 7).]  Plaintiff clarifies that such language in the Complaint is intended to serve as guiding principles in measuring damages with respect to Counts I, II, III, and IV.  Plaintiff asserts that

> [a] wrongdoer who acts in such a manner cannot argue that damages should be measured against the scenario in which he had foreclosed properly and he should receive a credit for the debt owed. Rather, the tortfeasor/public policy allegation merely underscores Plaintiff's contention that, having elected to take [the Property] ***outside the law***, U.S. Bank must pay damages measured by full market value and there is no credit for the debt owed.

[Id. (emphasis in original).]

## 2.  Count III - Intentional Interference

With respect to Count III, Plaintiff argues that it is sufficiently pled to survive a motion to dismiss.  Plaintiff agrees with Defendant's recitation of the elements of an intentional interference claim.  Plaintiff disagrees, however, with Defendant's assertion that the Complaint has failed to allege the knowing or intentional nature of Defendant's acts. Plaintiff argues that paragraphs 9, 33, 34, and 40 of the Complaint allege that Defendant's recordation of the Assignment

in the BOC was "knowing."  Plaintiff also disagrees with
Defendant's assertion that the Complaint failed to adequately
identify an economic advantage.  Plaintiff argues that the
Complaint contains clear allegations that he lost title to and
possession of the Property, which otherwise would have been an
economic opportunity for Plaintiff as an asset that he could rent
or sell.  Plaintiff contends that an entity such as Defendant is
"hard-pressed" to argue that it does not know of such an economic
opportunity.  Plaintiff further contends that the same persons to
whom Defendant published its Notice of Intention to Foreclose are
the same persons would have been interest in purchasing the
Property directly from Plaintiff.  [Id. at 24-25.]

> ### C.   The Applicable Statutes of
> ###       Limitations to Plaintiff's Other Claims

        Plaintiff disagrees with Defendant that, except for
Count I, Plaintiff's claims are subject to a two-year statute of
limitations.  Instead, Plaintiff asserts that the applicable
limitations period is six years.  Plaintiff notes that Defendant,
as the proponent of the instant Motion, has presented no law that
the statute of limitations applicable to Plaintiff's non-UDAP
claims is two years.  Plaintiff argues that the Motion should be
denied on this ground alone.  [Id. at 25-26.]

        Plaintiff also notes that Defendant has failed to
demonstrate that the Complaint does not leave open the
possibility that tolling, fraudulent concealment, or application

the "discovery" rule could be used to establish a later accrual

date.  Plaintiff recognizes that a motion to dismiss can be based

on the fact that the statute of limitations has expired, but

argues that it can only be granted if the allegations in the

complaint would not permit the plaintiff to prove that the

statute was tolled.  [Id. at 26 (quoting Jablon v. Dean Witter &

Co., 614 F.2d 677, 682 (9th Cir. 1980)).]  Plaintiff further

argues that, although Defendant has shown that the "discovery"

rule is inapplicable to Count I, Defendant has failed to make the

same showing with respect to Plaintiff's claims under Haw. Rev.

Stat. §§ 657-7, 657-20, or other forms of equitable tolling.

[Id. at 26-27.]

### 1.   **Count II - Wrongful Foreclosure**

Plaintiff argues that Defendant has failed to establish

that Count II is subject to a two-year statute of limitations.

Plaintiff contends that, to the extent that Count II seeks

damages, either § 657-1(1) or (4) would govern, and both apply a

six-year statute of limitations.  [Id. at 27.]

Plaintiff argues that a suit involving wrongful

foreclosure is analogous to the tort of conversion, and that this

district court has held that a cause of action for conversion is

not subject to the two-year statute of limitations that is

applied to claims of damage to property.  [Id. at 27-28 (citing

Kekauoha-Alisa v. Ameriquest Mortg. Co. (In re Kekauoha-Alisa),

21

Bankruptcy No. 05-01215, 2013 WL 773057 (Bankr. D. Hawai`i

Feb. 27, 2013)).] According to Plaintiff, this district court

has distinguished between a claim of damage or injury to property

and a claim of conversion of property, and held that the latter

is subject to a six-year limitations period. [Id. (some

citations omitted) (citing Gates v. P. F. Collier, Inc., 256 F.

Supp. 204, 214 (D. Hawai`i 1966), aff'd, 378 F.2d 888 (9th Cir.

1967)).] Plaintiff argues that, because the Complaint does not

allege that Defendant caused injury to, but that Defendant

wrongfully deprived Defendant of, the Property, his claim is not

subject to the two-year limitations period applicable to claims

of injury to property.

Plaintiff contends that, because the two-year statute

of limitation does not apply, the six-year limitations period

under § 657-1(4) governs Plaintiff's personal action for wrongful

foreclosure. Plaintiff asserts that the Hawai`i Supreme Court,

after noting that the definition of "personal action" encompasses

misrepresentations, applied the six-year statute of limitation to

a claim for misrepresentation in the sale of real property.

Plaintiff argues, therefore, that "personal action" should also

encompass the conduct regarding Defendant's filing of the

Assignment in the BOC, particularly where courts have held that

the two-year statute is inapplicable to conversion-type claims.

[Id. at 29 (citing Au v. Au, 63 Haw. 210, 217, 626 P.2d 173, 179

22

(1981)).]

Plaintiff appears to argue that, even if Defendant had some right to foreclose by virtue of a valid endorsement of the Note or assignment of the Mortgage, the Assignment that Defendant actually filed in the BOC was a false document used to expedite the foreclosure process.  If this was the case, Plaintiff asserts that a wrongful foreclosure claim "arises out of the breach of duty of a quasi-fiduciary using a contractually granted power with the obligations rooted in the common law to treat the borrower/mortgagor fairly." [Id. at 29 (citation and emphasis omitted).]  Plaintiff argues that Defendant's improper acceleration of the foreclosure process and unlawful shortcuts to acquire the Property faster are the factual bases of his wrongful foreclosure claim, which is ultimately founded on an "obligation" that Defendant owed Plaintiff. [Id. at 29-30 (citing Eckard Brandes, Inc. v. Riley, 338 F.3d 1086 (9th Cir. 2003)).] Plaintiff notes the Hawai`i Supreme Court's holding in Higa v. Mirikitani, 55 Haw. 167, 517 P.2d 1 (1973), that the words "obligation" and "liability" concern actions that are hybrids of both tort and contract law, and primarily involve alleged injuries to intangible property interests.  [Id. at 30 (citing Higa, 55 Haw. at 173, 517 P.2d at 5).]  Alternatively, a claim for wrongful foreclosure falls into the catch-all provision of

§ 657-1(4).  Either way, Plaintiff asserts, the six-year statute

of limitations is applicable.  Plaintiff again emphasizes that

Defendant has failed to meet its burden to establish, as a matter

of law, that Count II is subject to a two-year limitations

period.  [Id. at 30.]

### 2.   Count III - Intentional Interference

Plaintiff argues that there is no case on point to

support the proposition that an intentional interference claim is

subject to a two-year statute of limitations.  Plaintiff asserts

that, like wrongful foreclosure, the tort of intentional

interference  is similar to that of conversion in that

intentional interference involves the wrongful deprivation of an

intangible opportunity, and not physical harm to tangible

property.  A claim for intentional interference generally

requires more than a showing of mere negligence, and the

interference must be unjustified.  [Id. at 30-31.]

Plaintiff then asserts that another similar tort is

negligent misrepresentation, and that Hawai`i courts apply the

six-year statute of limitations in § 657-1(4) to claims for

negligent misrepresentation.  Plaintiff contends that, in Au, the

Hawai`i Supreme Court did not apply § 657-7 to the plaintiff's

claims for misrepresentation because such claims did not involve

"physical" injury to property.  [Id. at 31 (citing Au, 63 Haw. at

215-17, 626 P.2d at 177-79).]  Based on the reasoning of the Au

24

court, Plaintiff argues that, because he alleges the injury of deprivation of title to and use of the Property, and not physical harm, § 657-7 is inapplicable to Count III.  Plaintiff also adds, "[i]n addition, courts will apply the longer limitations period when there is doubt as to which statute applies."  [Id. at 32 (quoting Au v. Au, 63 Haw. 263, 264, 626 P.2d 182 (1981) (denying rehearing of Au, 63 Haw. 210, 626 P.2d 173).]

### 3.   **Fraudulent Concealment**

Plaintiff also argues that Defendant is not entitled to dismissal because the Complaint's allegations could support a finding of fraudulent concealment.  Such a finding would provide an equitable tolling defense to Count I, pursuant to Leibert v. Finance Factors, Ltd., 71 Haw. 285, 788 P.2d 833 (1990), as well as to Plaintiff's other claims, pursuant to § 657-20.[7] Section 657-20 prevents dismissal on the ground that the statute of limitations has expired where the plaintiff points to

---

[7] Haw. Rev. Stat. § 657-20 provides:

> If any person who is liable to any of the actions mentioned i this part or section 663-3, fraudulently conceals the existence of the cause of action or the identity of any person who is liable for the claim from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or should have discovered, the existence of the cause of action or the identity of the person who is liable for the claim, although the action would otherwise be barred by the period of limitations.

sufficient facts to support a finding that the defendant took affirmative steps to conceal the existence of the cause of action. [Id. at 32-33 (citing Nakamoto v. Hartley, 758 F. Supp. 1357 (D. Hawai`i 1991)).] Plaintiff argues that the Complaint alleges facts, that, if proven, would support a finding that Defendant took affirmative steps to conceal the causes of action from Plaintiff. After the foreclosure sale of the Property, Defendant recorded the Affidavit of Foreclosure, [Bickerton Decl., Exh.1,] asserting that Defendant was the authorized mortgagee and that it had taken all the proper steps. Plaintiff contends that Defendant's recordation of the Affidavit of Foreclosure constitutes concealment of the fact that the Assignment was made without authority. [Id. at 33.]

In conclusion, Plaintiff maintains that his claims are timely under the applicable statutes of limitation, and that the Complaint properly states claims for UDAP, wrongful foreclosure, and intentional interference.[8]

## III. Reply

### A. Count I - UDAP

Defendant emphasizes that Plaintiff's memorandum in opposition does not dispute that all the acts of Defendant's purported unlawful scheme to deprive him of the Property fall

---

[8] The Court notes that Plaintiff's memorandum in opposition does not contain a detailed discussion with respect to Count IV.

outside the four-year statute of limitations for UDAP claims.

Plaintiff also does not dispute that the allegedly improper

Assignment is the predicate for all claims in the Complaint.

Defendant argues that this district court has repeatedly held

that UDAP claims accrue on the date the alleged violation

occurred, and not when all elements for a UDAP claim are present,

as Plaintiff argues.  Defendant also argues that there was no

continuing violation in the instant case.  Defendant therefore

urges the Court to dismiss Count I.  [Reply at 1-2.]

Defendant argues that an "occurrence rule" governs

Count I.  [Id. at 2 (citing Robert's Waikiki, 491 F. Supp. at

1227).  Defendant notes that this district court has held that,

"'the applicable rule governing the statute of limitations for

claims arising under [HRS] § 480-2 is the **occurrence rule**.'"

[Id. at 2-3 (alteration and emphasis in Reply) (quoting McDevitt,

522 F. Supp. 2d at 1289).]  Defendant also notes that § 480-3

mandates that Chapter 480 "'be construed in accordance with

judicial interpretations of similar federal antitrust

statutes[.]'"  McDevitt, 522 F. Supp. 2d at 1289 (quoting Haw.

Rev. Stat. § 480-3).  Defendant asserts that, in Zenith, the

United States Supreme Court found that federal antitrust laws

similar to Chapter 480 also contain a four-year limitations

period and apply the occurrence rule, and this district court has

rejected the discovery rule, and now applies the occurrence rule.

27

[Reply at 3 (some citations omitted) (citing <u>Rundgren v. Bank of New York Mellon</u>, Civil No. 10-00252 JMS/LEK, 2010 WL 4066878, at *6 (D. Hawai`i Oct. 14, 2010)).]

Defendant asserts that no case law or other authority supports Plaintiff's argument that a UDAP claim cannot accrue until all of its elements exist, including a demonstrable injury. Defendant also asserts that Plaintiff misconstrues the cases Defendant cites in its Motion to mean that a UDAP claim "'is not complete ***until the transaction in question is finalized***.'" [Reply at 3-4 & n.3 (emphasis in Mem. in Opp.) (quoting Mem. in Opp. at 17).] Plaintiff's interpretation, however, would essentially require the Court to apply the discovery rule, which this district court expressly rejected in <u>Robert's Waikiki</u>, and ultimately applied the occurrence rule. Defendant points to the Complaint's allegations that: the Assignment constituted a UDAP; Defendant's knowing use and recordation of the Assignment constituted a UDAP; Defendant's foreclosure of the Property resulted from Defendant's UDAPs. [Reply at 4 (citing Complaint at ¶¶ 28, 34, 32).] Defendant maintains that the statute of limitations began to run on Plaintiff's UDAP claim in February 2009, when the Assignment "occurred."

Defendant argues that Plaintiff cannot reasonably dispute that the Assignment is the predicate for the other allegations related to his UDAP claim. The Complaint asserts

28

that the foreclosure itself would not have been wrongful but for the fact that it was predicated on the allegedly improper and void Assignment.  [Reply at 4-5 (citing Complaint at ¶ 33).] Thus, Defendant argues that because any UDAP claim arising from the foreclosure of the Property is inextricably linked to the Assignment in February 2009, the fact that the foreclosure sale occurred within four years of the filing of the Complaint is irrelevant.  In other words, Plaintiff is unable to establish an independent UDAP claim arising out of the April 2009 foreclosure sale.  Defendant contends that the Complaint's allegations clearly establish that the foreclosure sale triggered Plaintiff's cause of action for UDAP in February 2009, rendering Plaintiff's UDAP claim, filed April 2013, untimely.  [Id. at 5.]

Defendant next argues that Plaintiff's argument of a continuing violation that was not complete until the foreclosure sale on April 30, 2009, or until title to the Property was transferred to Defendant, has no merit.  [Id. at 6 & n.4 (citing Mem. in Opp. at 15, 16).]  According to Defendant, the issue is whether the allegedly wrongful conduct is "'part of a continuing pattern of related improper conduct[.]'"  [Id. (other citations omitted) (quoting Au v. Republic State Mortg. Co., Civil No. 11-00251 JSM/KSC, 2013 WL 1339738, at *13 n.24 (D. Hawai`i Mar. 29, 2013)).]  "The key requirement of a continuing violation 'is that the incidents must be closely enough related, such as within the

same category or type of violation.'" [Id. (some citations omitted) (quoting Counts v. Reno, 949 F. Supp. 1478, 1485 (D. Hawai`i 1996)).] Defendant argues that, in Green v. Los Angeles County, 883 F.2d 1472 (9th Cir. 1989), the Ninth Circuit found no continuing violation because the alleged violations that fell within the limitations period was not in the same category as those outside the limitations period. [Reply at 7 (citing Green, 883 F.2d at 1481).] In asserting that the same rationale applies to the instant case, Defendant notes Plaintiff's allegation that the execution of the Assignment is a UDAP separate from the foreclosure, which actually arose from Plaintiff's default on the Mortgage and Note and Defendant's invocation of its power of sale. Defendant asserts that "[t]he Assignment and foreclosure are discrete events that bear no resemblance to the substantively-similar discrimination and harassment allegations the Ninth Circuit has found sufficient to trigger the continuing violation doctrine." [Id. (citation omitted).] Although Plaintiff contends that Assignment and the foreclosure were part of Defendant's scheme, Defendant argues that, even construed in Plaintiff's favor, these allegations are insufficient. Defendant asserts that the case law establishes that the finding of a continuing violation requires that the underlying acts be substantively related and part of a larger pattern. A discrete act does not constitute a continuing violation, and the

foreclosure cannot be reasonably construed as anything but a discrete act.  Thus, there was no continuing violation in this case.  [<u>Id.</u> at 7-8 (citation and footnote omitted).]


    **B.   <u>Plaintiff's Other Claims</u>**

       Defendant first comments that, although Plaintiff's memorandum in opposition clarifies that his other claims are for wrongful foreclosure, intentional interference, and trespass, such clarification would not be necessary if Plaintiff had sufficiently pled these claims in the Complaint.  Defendant then argues that these claims cannot withstand the heightened pleading standard under <u>Ashcroft v. Iqbal</u>, 556 U.S. 662 (2009), and <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007).  [Reply at 8 (citing Mem. in Opp. at 7).].  Defendant urges the Court to reject Plaintiff's requested application of the "no set of facts" standard set forth in <u>De La Cruz v. Tormey</u>, 582 F.2d 45, 48 (9th Cir. 1978), and <u>Sagana v. Tenorio</u>, 384 F.3d 731, 736-37 (9th Cir. 2004).  [<u>Id.</u> at 9 n.7.]

    **1.   <u>Count II - Wrongful Foreclosure</u>**

       Defendant maintains its argument that Hawai`i law does not recognize a wrongful foreclosure claim.  [<u>Id.</u> at 9 n.8 (citations omitted).]  Defendant further argues that, to the extent that a wrongful foreclosure claim does exist under Hawai`i law, Plaintiff has still not sufficiently pleaded such a claim

here.  The Ninth Circuit has held that claims for wrongful
foreclosure can be premised on either allegations that there was
no default or allegations that there were procedural defects in
the foreclosure process that resulted in damages to the borrower.
[Id. at 10 (citing Cervantes v. Countrywide Home Loans, Inc. 656
F.3d 1034, 1043 (9th Cir. 2011)).]  Because the Complaint does
not allege that Plaintiff was not in default with respect to the
Mortgage and Note, Plaintiff's wrongful foreclosure claim must
allege that the procedural defects in the foreclosure process
caused him damages.  Defendant contends that Plaintiff has failed
to do so.  The sole basis for Plaintiff's wrongful foreclosure
claim is the Assignment, which would only be void if its
execution constituted a UDAP, as Plaintiff alleges.  [Id. at 10-
11 (citing Complaint at ¶¶ 32-36).]  Defendant argues, however,
that Plaintiff's allegations that the creation or recordation of
the Assignment constituted a UDAP are not viable because such
events occurred outside of UDAP's four-year statute of
limitations period.  Thus, Defendant reasons that Count II cannot
survive unless the Assignment did constituted a UDAP.  Defendant
asserts this reasoning leads to two conclusions:  (1) pursuant to
Cervantes, Plaintiff cannot allege procedural defects based on
the Assignment that might give rise to a wrongful foreclosure
claim; and (2) because the foreclosure is not wrongful for the
reasons Plaintiff alleges, he could not have been damaged by the

foreclosure.  Under either conclusion, Defendant argues that
Count II fails.  [Id. at 11.]

Defendant further argues that Plaintiff's claim fails
because Plaintiff cannot allege damages where he does not dispute
that he is in default, and he does not allege that another entity
has tried to collect the outstanding debt on the Mortgage and
Note.  Defendant emphasizes that "[t]he validity of the
Assignment doe not affect **whether** Plaintiff owed his obligations
under the loan, but only **to whom** Plaintiff was obligated."  [Id.
at 12 (emphasis in Reply) (citations omitted).]  Because
Plaintiff does not dispute that he is in default on the Mortgage
and Note, he effectively concedes that the foreclosure itself was
justified, and merely disputes whether Defendant was the right
entity to conduct it.  Defendant notes that, after Plaintiff
defaulted, the Mortgage's power of sale clause allowed Defendant
to properly foreclose on the Property.  [Id. at 12 & n.10.]  In
light of Plaintiff's default, absent allegations that the
foreclosure harmed him in some way other than besides his
inevitable loss of the Property, Defendant asserts that Plaintiff
cannot state a viable wrongful foreclosure claim.  [Id. at 12-13
& n.11 (citing Complaint at ¶¶ 35, 36).]  Thus, because the
Complaint does not plead a plausible claim for wrongful

foreclosure, it should be dismissed.[9]  [Id. at 13.]

## 2.   Count III - Intentional Interference

Defendant states that, "[t]he primary objective of the tort of interference with prospective business advantage or opportunity is in the protection of **legitimate and identifiable business expectancies.**"  [Id. at 14 (emphasis in Reply) (citations and internal quotations marks omitted).]  Defendant refers to Plaintiff's recognition of the elements he must establish with respect to Count III, as first stated in Defendant's Motion, and pronounced in Meridian Mortgage, 109 Hawai`i at 47-48, 122 P.3d at 1145-46.  [Id. (some citations omitted) (citing Mem. in Opp. at 24).]

With respect to the first element, Defendant states that "'there must be a colorable economic relationship between the plaintiff and a third party with the potential to develop into a full contractual relationship.'"  [Reply at 14-15 (emphasis omitted) (quoting Locricchio v. Legal Servs. Corp., 833

---

[9] Defendant also notes that, based on its foregoing arguments, the Court need not address the issue of what statute of limitations applies to a claim for wrongful foreclosure. Defendant's discussion nevertheless continues, asserting that Plaintiff relies on non-binding and unrelated cases in arguing that a six-year statute of limitations is applicable to this claim.  Because Plaintiff alleges injuries resulting from the purported improper foreclosure of the Property, the two-year statute of limitations under § 657-7 applies.  Defendant maintains that Count II is untimely because it accrued on April 30, 2009, at the latest.  [Reply at 13 n.12 (citations omitted).]

F.2d 1352, 1357 (9th Cir. 1987)).] Defendant argues that the Complaint neither identifies a third party with whom Plaintiff had a colorable economic relationship, nor does it allege any reasonable probability of the development of a full contractual relationship. Defendant contests Plaintiff's argument that the Property constituted an "economic opportunity" because Plaintiff could have rented or sold it. Defendant, however, contends that "the hypothetical ability to use or dispose of the property is not a legitimate and identifiable business expectanc[y]." [Id. at 15 (citation and internal quotations marks omitted) (alteration in Reply).] When viewed in the context of Iqbal and Twombly, Defendant argues, Count III fails on this basis alone.

Defendant further argues that Count III also fails because the remaining elements are dependent on the existence of a relationship with a third-party, which the Complaint does not allege. Defendant asserts that the fact that Defendant's recordation of the Assignment was "knowing" is irrelevant. [Id. (citing Mem. in Opp. at 25).] Instead, the main issue is whether Plaintiff has alleged that Defendant knew of a specific business relationship between Plaintiff and an identified third-party. Because Defendant could not have knowledge of a relationship that did not exist, Defendant reasons that it could not have purposefully intended to interfere with an existing relationship or that Plaintiff could have suffered any resulting damage.

35

Defendant therefore argues that Count III should be dismissed.[10] [Id. at 15-16.]

### 3.   **Count IV - Trespass**

Defendant notes that Plaintiff cannot and does not dispute that his claim for trespass is subject to a two-year statute of limitations.  [Id. at 16 (other citation omitted) (citing Haw. Rev. Stat. § 657-7).]  Defendant notes that the Complaint does not contain allegations as to when the trespass occurred, which would warrant dismissal under Iqbal and Twombly. In the alternative, Defendant argues that the trespass could not have occurred later than May 14, 2009, the date on which the Property was deeded to Defendant after the foreclosure sale. [Id. (citing Bickerton Decl., Exh. 3 at 1).]   Thus, Defendant argues, Count IV is untimely.   Furthermore, the Complaint does not allege facts that can be construed to warrant the application of equitable tolling, belated discovery, or a continuing violation.  [Id. at 16 n.16.]

### 4.   **Tolling of the Statute of Limitations**

Finally, Defendant contests Plaintiff's argument that fraudulent concealment in the instant case tolled the statutes of limitation on his claims.  [Id. at 17 (citing Mem. in Opp. at 32-

---

[10] Defendant notes that, based on the pleading deficiencies of Count III, the Court need not reach the issue of what statute of limitations applies to Count III.  Defendant also indicates, however, that it does not waive, and wishes to preserve, its right to assert this defense if necessary.  [Id. at 16 n.13.]

33).] Defendant asserts that, where a plaintiff knows of his cause of action, there can be no fraudulent concealment. The plaintiff need not know the details of the evidence supporting his cause of action, but it is sufficient that he know that his cause of action exists. Defendant argues, "'[i]t is enough that he knows that a cause of action exists in his favor, and when he has this knowledge, it is his own fault if he does not avail himself of those means of those means which the law provides for prosecuting or preserving his claim.'" [Id. (quoting Au, 63 Haw. at 215, 626 P.2d at 178).] Defendant argues that Plaintiff knew or should have known of his causes of action on either March 15, 2009, when he was served with the Notice of Non-Judicial Foreclosure, [Bickerton Decl., Exh. 1,] or on April 30, 2009, the date of the foreclosure sale. Thus, on April 30, 2009, at the latest, Plaintiff would have had all the requisite information to bring his claims. [Reply at 17.]

In conclusion, Defendant urges the Court to grant its Motion and dismiss the Complaint.

**STANDARD**

I. **Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

Under Rule 12(b)(6), review is generally
limited to the contents of the complaint.

37

> <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001). . . .
>
> On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. <u>Fed'n of African Am. Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554, 127 S. Ct. 1955).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint — "is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S. Ct. at 1949. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. <u>Id.</u> at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

<u>Billete v. Deutsche Bank Nat'l Trust Co.</u>, Civil No. 13-00061 LEK-

KSC, 2013 WL 2367834, at *5-6 (D. Hawai`i May 29, 2013) (quoting Enriquez v. Countrywide Home Loans, FSB, 814 F. Supp. 2d 1042, 1055 (D. Hawai`i 2011) (some citations omitted)).

**DISCUSSION**

**I.  Count I - UDAP**

Plaintiff alleges that, pursuant to Haw. Rev. Stat. § 480-13, he is entitled to damages for Defendant's violations of Chapter 480, based on:  the fact that Defendant's agent essentially forged the Assignment on behalf of New Century, in violation of Haw. Rev. Stat. § 708-852(1); Defendant's preparation, receipt, and use of the Assignment of the Mortgage and Note; Defendant's act of recording the Assignment in the BOC; and Defendant's "knowing use and recordation" of the Assignment, despite the lack of authorization from New Century and the Trustee, to cause the foreclosure sale of the Property. [Complaint at ¶¶ 25, 28-32, 34.]

Section 480-2 states, in pertinent part:  "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful. . . .  Any person may bring an action based on unfair methods of competition declared unlawful by this section."  Haw. Rev. Stat. § 480-2(a), (e).  "Section 480-13 provides a private right of action for violations of section 480-2. . . . To maintain this cause of action, the plaintiff must demonstrate:  (1) a violation of

39

section 480-2; (2) injury to the consumer caused by such a violation; and (3) proof of the amount of damages." Hoilien v. Bank of Am., CV. No. 10-00761 DAE-KSC, 2011 WL 3494523, at *8 (D. Hawai`i Aug. 10, 2011) (citing Davis v. Wholesale Motors, Inc., 949 F. Supp. 1344, 1346 (D. Hawai`i 1996)).

Defendant argues that Count I is time-barred because of the four-year statute of limitations applied to claims based on Chapter 480.  [Mem. in Supp. of Motion at 5; Reply at 1.] Section 480-24(a) provides:

> Any action to enforce a cause of action arising under this chapter shall be barred unless commenced within four years after the cause of action accrues . . . .  For the purposes of this section, a cause of action for a continuing violation is deemed to accrue at any time during the period of the violation.

"Furthermore, the statute of limitations period starts to run upon the occurrence of [the defendant's] alleged violation." Wallace v. BAC Home Loans Servicing, LP, CV. No. 10-00618 DAE KSC, 2011 WL 675354, at *7 (D. Hawai`i Feb. 16, 2011) (citing McDevitt v. Guenther, 522 F. Supp. 2d 1272, 1289-90 (D. Hawai`i 2007)); see also Rundgren v. Bank of New York Mellon, Civil No. 10-00252 JMS/LEK, 2010 WL 4066878, at *6 (D. Hawai`i Oct. 14, 2010) ("This four-year period begins to run from the date of the occurrence of the violation, as opposed to the discovery of the alleged violation.").  Defendant argues that, based on the "occurrence" rule, Plaintiff's UDAP claim accrued on February 18,

40

2009, the date that Defendant allegedly forged the Assignment. [Mem. in Supp. of Motion at 6-7; Reply at 4.]

Plaintiff contends that a UDAP claim does not accrue until the alleged injury actually occurs. [Mem. in Opp. at 1, 14.] An alleged injury, however, is part of a plaintiff's pleading requirements for a UDAP claim, and is not a factor in determining when the UDAP claim accrued. The Complaint alleges that, on February 18, 2009, Defendant forged the Assignment on behalf of New Century, essentially assigning the Mortgage and Note to itself. [Complaint ¶¶ 25, 27.] Plaintiff's other claims are also predicated on the allegedly forged Assignment. [Id. at ¶ 37.] Thus, the Court concludes that Count II accrued on February 18, 2009, the date of the Defendant's alleged violation. Plaintiff filed his Complaint on April 4, 2013. [Notice of Removal, filed 5/14/13 (dkt. no. 1), Exh. 3.] In light of the four-year limitations period under Haw. Rev. Stat. § 480-24(a), Count II is time-barred unless the Complaint alleges sufficient facts to support a finding of a "continuing violation," or some reason that the statute of limitations may be tolled.

A.   **Continuing Violation**

Plaintiff argues that Count I is still timely under the "continuing violation" provision of Section 480-24(a). Plaintiff asserts that Defendant's acts were all part of its scheme to deprive Plaintiff of the Property, and that the injury the

41

scheme, *i.e.*, Defendant's continuing violation, caused was the foreclosure sale.  Plaintiff argues that Count I is timely because he filed his Complaint within the four-year limitations period after the foreclosure sale, the last act of Defendant's scheme.  Plaintiff cites Au v. Republic State Mortgage Co., Civil No. 11-00251 JMS/KSC, 2013 WL 1339738, at *13 n.4 (D. Hawai`i Mar. 29, 2013), for support.  [Mem. in Opp. at 14-15, 18.]

In Au, with respect to the "continuing violation" theory, this district court cited Joseph v. J. J. Mac Intyre Cos., LLC, 281 F. Supp. 2d 1156 (N.D. Cal. 2003).  Au, 2013 WL 1339738, at *13 n.4.  In Joseph, the court applied the continuing violation doctrine to the plaintiff's claim under the federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692. The plaintiff's FDCPA claim alleged that, in attempts to collect on the plaintiff's debt, the defendant used an automated dialing system with a pre-recorded voice to make repeated calls to the defendant, some on which occurred within the limitations period, and some of which preceded it.  Joseph, 281 F. Supp. 2d at 1158-59.  The court stated that "[t]he key is whether the conduct complaint of constitutes a continuing pattern and course of conduct as opposed to unrelated discrete acts."  Id.  The court focused on the pattern of the defendant's harassing conduct, and found a continuing violation because "claims of a pattern of debtor harassment consisting of a series of calls cannot be said

42

to occur on any particular day." Id. at 1161 (internal quotations marks omitted) (quoting Nat'l R. R. Passenger Corp. v. Morgan, 536 U.S. 101, 115, 122 S. Ct. 2061, 2073 (2002)).  In other words, "[i]t occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own terms." Morgan, 536 U.S. at 115, 122 S. Ct. at 2073.  The Joseph court therefore concluded that the continuing violation doctrine could apply to debt collection claims.  Joseph, 281 F. Supp. 2d at 1161.

Plaintiff contends that he has "alleged a pattern and course of conduct" that began with the forgery of the Assignment, and concluded with the foreclosure sale, which was based on the forged Assignment.  [Mem. in Opp. at 18.]  Even viewing the facts in the light most favorable to the Plaintiff, the Court finds that Defendant's alleged conduct does not amount to a continuing violation.  Plaintiff has not alleged facts to support a claim of Defendant's repeated pattern and course of conduct with respect to its alleged forgery of the Assignment.  Although the foreclosure sale followed the alleged forged Assignment, it is not part of a continuing violation; at most it is a discrete act. See Au, 2013 WL 1339738, at *13 n.4 (citing Joseph, 281 F. Supp. 2d at 1161).

Moreover, the Complaint alleges, and Plaintiff's memorandum in opposition further asserts, that the acts

consisting of Defendant's continuing violation occurred on particular days.  Plaintiff asserts that the violation began with Defendant's forgery of the Assignment on February 18, 2009, and ended with the foreclosure sale on April 30, 2009.  [Complaint at ¶¶ 25, 32; Mem. in Opp. at 18.]  Even Defendant's filing of the Assignment in the BOC and its filing of the Affidavit of Foreclosure are discrete acts because they allegedly occurred on particular days—February 24, 2009 and May 5, 2009, respectively. [Complaint at ¶ 29; Mem. in Opp. at 8, 15 (citing Bickerton Decl., Exh. 1).]  The Complaint has failed, however, to allege facts as to a continuous pattern of Defendant's unfair or deceptive acts or practices.  The Court therefore concludes that the "continuing violation" doctrine does not apply to Count I.

**B.    Fraudulent Concealment**

Plaintiff argues that the Complaint alleges facts to support a finding of fraudulent concealment on the part of Defendant so as to toll the statute of limitations on Count I. [Mem. in Opp. at 32.]  Defendant opposes this argument, and asserts that Plaintiff knew or should have known of his cause of action on March 15, 2009, Plaintiff signed and acknowledged his receipt of the Notice of Non-judicial Foreclosure.  [Reply at 17 (citing Bickerton Decl., Exh. 1 at 50).]  Defendant asserts that, at the very latest, Plaintiff would have had all the requisite

information of his UDAP claim on April 30, 2013, the date of the

foreclosure sale.  [Id.]

The district court has recognized that the four-year

limitations period of a UDAP claim may be tolled "based on the

equitable tolling doctrine of fraudulent concealment."  Rundgren,

2013 WL 3072408, at *4.  In Rundgren, this district court stated:

> To invoke this doctrine, a plaintiff must plead
> facts showing affirmative concealment by the
> defendant:
>
> > To avoid the bar of limitation by invoking
> > the concept of fraudulent concealment, the
> > plaintiff must allege facts showing
> > affirmative concealment upon the part of the
> > defendant which would, under the
> > circumstances of the case, lead a reasonable
> > person to believe that he did not have a
> > claim for relief.  Silence or passive conduct
> > of the defendant is not deemed fraudulent,
> > unless the relationship of the parties
> > imposes a duty upon the defendant to make
> > disclosure.

Id. at *4-5 (citations omitted).  The court further stated:

> Thus, to carry "the burden of pleading and proving
> fraudulent concealment [, the plaintiff] must
> plead facts showing that [the defendant]
> affirmatively misled [the plaintiff], and that
> [the plaintiff] had neither actual nor
> constructive knowledge of the facts giving rise to
> its claim despite its diligence in trying to
> uncover those facts." . . .  A plaintiff has
> constructive knowledge if it "should have been
> alerted to facts that, following duly diligent
> inquiry, could have advised it of its claim."

Id. at *5 (other citations omitted) (alterations in Hexcel)

(quoting Hexcel Corp. v. Ineos Polymers, Inc., 681 F.3d 1055,

1060 (9th Cir. 2012)).

45

Plaintiff alleges that Defendant forged the Assignment and used it to "[c]onceal or obscure defects or the existence of other entities in the chain of title from New Century . . . by which U.S. BANK might otherwise have been required to claim ownership of the [Note or Mortgage] of the right to foreclose." [Complaint at ¶¶ 30, 32.]  Plaintiff argues that Defendant fraudulently concealed his cause of action by recording the Affidavit of Foreclosure, in which Defendant asserts that it was the authorized mortgagee and it had taken all the proper steps in executing the foreclosure.  [Mem. in Opp. at 33.]  Even if the Court accepts the factual allegations of the Complaint as true, Plaintiff has failed to sufficiently plead facts to support a finding of affirmative concealment on the part of Defendant.  The Complaint's merely alleges conclusory statements as to Defendant's concealment of the forged Assignment, which, without more, are insufficient to invoke the doctrine of equitable tolling.  Thus, the Court concludes that the statute of limitations was not tolled as to Count I.  The Court GRANTS Defendant's Motion as to Count I.  The Court finds that defects in the Complaint, with respect to a "continuing violation" under Haw. Rev. Stat. § 480-2(a), cannot be cured by any amendment. See Harris, 573 F.3d at 737.  Thus, to the extent that Plaintiff's UDAP claim based on a "continuing violation," Count I is DISMISSED WITH PREJUDICE.  The Court, however, finds that,

46

based on the equitable tolling doctrine of fraudulent concealment, Count I can arguably be cured by amendment.  See id. Thus, to the extent that Count I is based upon equitable tolling doctrine of fraudulent concealment, Count I is DISMISSED WITHOUT PREJUDICE.

II.      **Count II - Wrongful Foreclosure**

Count II alleges, because Defendant forged the Assignment on behalf of New Century, Defendant's subsequent foreclosure, which is based on the forged Assignment, is invalid. [Complaint at ¶¶ 30, 32-34.]  Defendant argues that Hawai`i law does not recognize a claim for wrongful foreclosure. [Mem. in Supp. of Motion at 7.]  In the alternative, Defendant also argues that, even if Hawai`i law recognizes a claim for wrongful foreclosure, the Complaint fails to state such a claim.  [Reply at 8-9.]

A.   **Recognition of a Wrongful Foreclosure Claim Under Hawai`i Law**

A wrongful foreclosure claim is a state law claim. Doran v. Wells Fargo Bank, Civil No. 11-00132 LEK-KSC, 2011 WL 5239738, at *9 (D. Hawai`i Oct. 31, 2011) (citing Curiel v. Barclays Capital Real Estate Inc., Civ. No. S-09-3074 FCD/KJM, 2010 WL 729499, at *1 (E.D. Cal. Mar. 2, 2010)).  There is no case law from the Hawai`i state courts addressing whether Hawai`i recognizes this claim and, if so, what the applicable statute of limitations is.

47

Jurisdiction in this case is based on diversity. [Notice of Removal at ¶ 4.]  When a federal court sits in diversity, "[i]n the absence of a governing state decision, a federal court attempts to predict how the highest state court would decide the issue, using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises, and restatements as guidance." Evanston Ins. Co. v. Nagano, 891 F. Supp. 2d 1179, 1189 (D. Hawai`i 2012) (some citations omitted) (citing Trishan Air, Inc. v. Fed. Ins. Co., 635 F.3d 422, 427 (9th Cir. 2011)).  This Court has recognized that, although Hawai`i has not specifically recognized a common law wrongful foreclosure cause of action, there are circumstances when a wrongful foreclosure claim may exist under Hawai`i law. For example, a wrongful foreclosure claim may exist where the foreclosure process failed to comply with Haw. Rev. Stat. Chapter 667 because the foreclosing party allegedly failed to provide the required notices or where the foreclosure was allegedly invalid because the entity that purportedly assigned the foreclosing party its interest in the subject loan was dissolved prior to executing the assignment.  See Swartz v. City Mortg., Inc., 911 F. Supp. 2d 916, 947 (D. Hawai`i 2012) (quoting Matsumura v. Bank of Am., N.A., CIV. No. 11-00608 JMS-BMK, 2012 WL 463933, at *3 (D. Hawai`i Feb. 10, 2012)); Billete, 2013 WL 2367834, at *7. This Court therefore rejects Defendant's argument that Count II

48

fails as a matter of law because the Hawai`i courts do not recognize a wrongful foreclosure cause of action.

### B.     **Whether Count II States a Plausible Claim**

In <u>Matsumura</u>, this district court explained that a wrongful foreclosure claim will not lie where the foreclosing party properly provided all required notices.

> Initially, Plaintiffs have not identified any procedural errors in the foreclosure process itself that would make the foreclosure "wrongful." <u>See</u> <u>Doran v. Wells Fargo Bank</u>, 2011 WL 5239738, at *9 (D. Haw. Oct. 31, 2011) (indicating that a "wrongful foreclosure" claim failed under Hawaii law because the notice of foreclosure was procedurally proper under HRS Ch. 667, and "the loan modification process did not invalidate the notice because an oral promise of a future loan modification does not supercede a mortgagee's right to sell"). Moreover, although Hawaii has not specifically recognized a common law wrongful foreclosure cause of action, "[s]ubstantive wrongful foreclosure claims [in other jurisdictions] typically are available after foreclosure and are premised on allegations that the borrower was not in default, or on procedural issues that resulted in damages to the borrower." <u>Cervantes v. Countrywide Home Loans</u>, 656 F.3d 1034, 1043 (9th Cir. 2011). . . .

2012 WL 463933, at *3.  In the instant case, Plaintiff has not alleged that Defendant failed to comply with any of the requirements under Haw. Rev. Stat. Chapter 667.  Thus, in order to survive a motion to dismiss, Plaintiff must allege that the foreclosure is invalid because the entity assigning the Mortgage and Note "did not exist or otherwise lacked standing to assign the loans[.]"  <u>See</u> <u>Niutupuivaha v. Wells Fargo Bank, N.A.</u>, Civil

No. 13-00172 LEK-KSC, 2013 WL 3819600, at *9 (D. Hawai`i July 22, 2013).

In <u>Niutupuivaha</u>, the plaintiffs executed a mortgage and note in favor of Countrywide Home Loans, Inc. ("Countrywide"), secured by the plaintiffs' real property.  <u>Id.</u> at *1.  Defendant Wells Fargo Bank, N.A. ("Wells Fargo"), the purported assignee of the plaintiffs' loans from Countrywide, subsequently foreclosed on the plaintiffs' property.  The plaintiffs brought, *inter alia*, a wrongful foreclosure action against Wells Fargo, claiming that, because it obtained the assignment through illegal actions, the assignment was therefore invalid, and Wells Fargo did not have the right to foreclose.  <u>Id.</u>

This Court recognized that

> [i]n <u>Nottage [v. Bank of New York Mellon]</u>, . . . this district court denied the defendant's motion to dismiss where the complaint asserted that, at the time of the assignment, the assignor no longer existed because it had been acquired by another entity.  [Civil No. 12-00418 JMS/BMK,] 2012 WL 5305506, at *4 [(D. Hawai`i Oct. 25, 2012)]. Similarly, in <u>Billete</u>, this Court refused to dismiss the plaintiffs' claim that the assignment, subsequent foreclosure, and ejectment were invalid because the complaint alleged that the execution of the assignment occurred approximately six months after the assignor's dissolution.  2013 WL 1367834, at *7.

<u>Id.</u> at *9.  This Court concluded that the reasons for denying the defendants' motions to dismiss in <u>Billete</u> and <u>Nottage</u> were not present in <u>Niutupuivaha</u>.  The Court therefore dismissed the

plaintiffs' claims for wrongful foreclosure because the complaint failed to allege "any factual allegations to support a claim that the entity assigning Wells Fargo its interest in Plaintiffs' loans did not exist or otherwise lacked standing to assign the loans to Wells Fargo."  Id.

As in Niutupuivaha, the reasons for the denial of the defendants' motions to dismiss in Billete and Nottage are also not present in the instant case.  The Complaint does not contain any factual allegations to support a claim that New Century, the entity assigning Defendant its interest in the Mortgage, did not exist or otherwise lacked standing to assign the loans to Defendant.  The Complaint merely makes allegations, based on conclusory statements, that, because Defendant forged the Assignment, the Assignment and subsequent foreclosure are invalid.  [Complaint at ¶¶ 25, 27.]  The Court therefore GRANTS Defendant's Motion as to Count II.  Whether Count II is dismissed with or without prejudice depends if Count II is time-barred under the applicable statute of limitations.

      C.    **<u>Whether Count II is Time-Barred</u>**

Defendant argues that Count II is time-barred because of a two-year statute of limitations, pursuant to Haw. Rev. Stat. § 657-7.  [Mem. in Supp. of Motion at 8-9.]  Plaintiff argues, however, that Defendant has failed to establish that Section 657-7 is the applicable statute of limitations to Count II.

Instead, Plaintiff argues that Count II falls under either § 657-1(1) or (4), both of which are subject to a six-year limitations period.  [Mem. in Opp. at 27.]  Section 657-1 states in relevant part:

> The following actions shall be commenced within six years next after the cause of action accrued, and not after:
>
>> (1) Actions for the recovery of any debt founded upon any contract, obligation, or liability, excepting such as are brought upon the judgment or decree of a court; excepting further that actions for the recovery of any debt founded upon any contract, obligation, or liability made pursuant to chapter 577A shall be governed by chapter 557A;
>
>> . . . .
>
>> (4) Personal actions of any nature whatsoever not specifically covered by the laws of the State.

As set forth *supra* Discussion section II.A., this Court must predict how the Hawai`i Supreme Court would decide which statute of limitations period applies to a wrongful foreclosure claim. The Hawai`i Supreme Court has stated that the appropriate statute of limitations period is determined by the nature of the claim or right alleged in the pleadings, not by the form of the pleadings. Au v. Au, 63 Haw. 210, 214, 626 P.2d 173, 177 (1981).  In determining whether § 657-1 or § 657-7 applies in the instant case, the question is whether or not Plaintiffs are suing for injuries to persons or damage to property, not whether the action is one of *ex contractu* or *ex delicto*.  See Gomez v. Am. Airlines,

52

Inc., 111 Hawai`i 67, 69, 137 P.3d 381, 383 (Ct. App. 2006)

(quoting Yoshizaki v. Hilo Hospital, 50 Haw. 1, 14-16, 924 P.2d

845, 853-54 (1967)).  Section 657-7 "has been interpreted to

apply to 'claims for damages resulting from *physical* injury to

persons or *physical* injury to tangible interests in property.'"

Id. at 70, 137 P.3d at 384 (emphases in Gomez) (quoting Au, 63

Haw. at 216, 626 P.2d at 178) (quoting Higa v. Mirikitani, 55

Haw. 167, 169-70 & n.5, 517 P.2d 1, 3 & n.5 (1973))).

        In contrast, the Hawai`i Supreme Court has applied

§ 657-1(1) to "hybrids of tort and contract and which have as

their gravamen injury to intangible property interests."  Higa,

55 Haw. at 173, 517 P.2d at 5.  In Higa, the Hawai`i Supreme

Court examined the issue of what was the applicable statue of

limitations for a legal malpractice action that concerned a "*non-

physical* injury to an *intangible* interest of the plaintiff-herein

the forfeiture through an attorney's alleged neglect of a

client's chose in action."  Id. at 170, 517 P.2d at 4 (emphases

in original) (footnote and citation omitted).  The supreme court

reasoned that,

> a claim for legal malpractice is not unlike other
> actions where the interests protected are
> intangible in nature and where the tort
> limitations period for "damages to person" in HRS
> § 657-7 seemingly apply.  *E.g.*, actions for
> invasion of privacy or malicious prosecution.
> Unlike these torts, however, the act of legal
> malpractice generally arises out of a contractual
> relationship between the parties, and hence, in
> pleading at least, may often be made to appear as

53

a breach of contract.  Accordingly, in determining
the timeliness of a complaint for legal
malpractice, troublesome issues arise in choosing
between the tort and contract statutes for the
relevant limitations period.

Id.  The supreme court held that § 657-1(1) was the applicable

statute of limitations, reasoning that:

> Although the word "debt" in [§ 657-1(1)] may
> connote in ordinary parlance an express
> contractual liability, this court has not so
> limited its meaning in the past.  See
> Schimmelfenning v. Grove Farm Co., 41 Haw. 124,
> 130-131 (1955) (applying section 657-1(1) to
> actions based on implied covenants in a lease);
> cf. Kerr v. Hyman Brothers, 6 Haw. 308, 309
> (1882).  Moreover, we are persuaded that the words
> "obligation" and "liability" in section 657-1(1)
> would be rendered meaningless unless read to
> encompass actions such as this, which are hybrids
> of tort and contract and which have as their
> gravamen injury to intangible property interests.
> Compare Yoshizaki v. Hilo Hospital, 50 Haw. 150,
> 433 P.2d 220 (1967).  A narrow reading of section
> 657-1(1) would thus fail to give effect to the
> meaning of these words-a result which transgresses
> the basic proposition that "[a] statute should be
> so construed as to make it consistent in all its
> parts and so that effect may be given to every
> section, clause or part of it."  Lyman v. Maguire,
> 17 Haw. 142, 145 (1905).

Id. at 173, 517 P.2d at 5 (some alterations in Higa).

Similarly, in Niutupuivaha, this Court stated, "like

the legal malpractice claim in [Higa, the plaintiffs' wrongful

foreclosure claim] sounds in tort but arises from a contractual

relationship between Plaintiffs and Wells Fargo, which, as a

result of various assignments, stands in the shoes of Plaintiffs'

original lender, Countrywide."  Niutupuivaha, 2013 WL 3819600, at

*12.  Although this Court ultimately dismissed the claim, this Court noted that the plaintiffs had alleged that the wrongful foreclosure caused non-physical injury to their intangible interests in the subject property.  The Court therefore held that the plaintiffs could timely amend their complaint to state a wrongful foreclosure claim that would be governed by the limitations period in § 657-1(1), not by § 657-7, and dismissed the claim without prejudice.  <u>Id.</u>

In this case, Plaintiff alleges that the wrongful foreclosure caused non-physical injury to his intangible interest in the Property, namely, his loss of title, possession, and invested personal funds.  [Complaint at ¶¶ 34, 36.]  Count II resounds in tort, but arises from the contractual relationship between Plaintiff and Defendant as a result of the purported Assignment.  Thus, this Court rejects Defendant's argument that Count II is time-barred by § 657-7, and conclues that § 657-1(1) is the applicable statute of limitations.  Further, it is arguably possible for Plaintiff to cure the defects in Count II by amendment.  <u>See</u> <u>Harris</u>, 573 F.3d at 737.  This Court therefore DISMISSES Count II WITHOUT PREJUDICE.

## III. <u>Count III - Intentional Interference</u>

As with Count II, the Complaint does not make allegations specific to Count III.  Instead, the Complaint asserts that, because of its alleged conduct, Defendant is liable

to Plaintiff for intentional interference.  Defendant argues that

the Complaint does not contain factual allegations to support a

plausible claim for intentional interference.

In Bodell Construction Co. v. Ohio Pacific Tech, Inc.,

this district court stated:

> The elements of a claim for prospective economic
> advantage are as follows:
>
>> [T]he following elements have evolved into
>> the tort of intentional or tortious
>> interference with prospective business
>> advantage:  (1) the existence of a valid
>> business relationship or a prospective
>> advantage or expectancy sufficiently
>> definite, specific, and capable of acceptance
>> in the sense that there is a reasonable
>> probability of it maturing into a future
>> economic benefit to the plaintiff; (2)
>> knowledge of the relationship, advantage, or
>> expectancy by the defendant; (3) a purposeful
>> intent to interfere with the relationship,
>> advantage, or expectancy; (4) legal causation
>> between the act of interference and the
>> impairment of the relationship, advantage, or
>> expectancy; and (5) actual damages.

458 F. Supp. 2d 1153, 1163 (D. Hawai`i 2006) (quoting Robert's

Haw. Sch. Bus, Inc. v. Laupahoehoe Transp. Co., 91 Hawai`i 224,

258, 982 P.2d 853, 887 (1999), superseded by statute, Haw. Sess.

Laws 2012, Act 229, § 2, as recognized in Haw. Med. Ass'n v. Haw.

Med. Servs. Ass'n, 113 Hawai`i 77, 107, 148 P.3d 1179, 1208

(2006)).  In Meridian Mortgage, Inc. v. First Hawaiian Bank, the

Hawai`i Intermediate Court of Appeals ("ICA") noted that the

Hawai`i Supreme Court in Robert's Hawaii did not expand on the

individual elements of intentional interference, but instead

56

referred to <u>Locricchio v. Legal Services Corp.</u>,
833 F.2d 1352 (9th Cir. 1987), and <u>Omega</u>
<u>Environmental, Inc. v. Gilbarco, Inc.</u>, 127 F.3d
1157 (9th Cir. 1997)[.] . . .  With respect to
intent, the Ninth Circuit Court of Appeals in
<u>Locricchio</u> stated that "tortious interference
requires a state of mind or motive more culpable
than mere intent."  833 F.2d at 1358.  In <u>Omega</u>,
the court further explained:

> The third element, intent, denotes
> purposefully *improper* interference.  The
> plaintiff must prove that the defendant
> either pursued an improper objective of
> harming the plaintiff or used wrongful means
> that caused injury in fact.  Asserting one's
> rights to maximize economic interests does
> not create an inference of ill will or
> improper purpose.

127 F.3d at 1166 (internal quotation marks and
citations omitted; emphasis in original).

109 Hawai`i 35, 48, 122 P.3d 1133, 1146 (Ct. App. 2005).

Plaintiff argues that he has adequately identified an
economic advantage with respect to the first element of an
intentional interference claim.  Plaintiff argues that the
opportunity to rent or sell the Property constituted a
prospective economic advantage, of which Plaintiff was deprived
when he lost title to and possession of the Property at the
foreclosure sale.  [Mem. in Opp. at 25.]  The most relevant
allegation in the Complaint is that, "[a]s a direct and proximate
result of the wrongful acts described above, Plaintiff Lowther
lost personal funds he invested in his Property (other than the
funds borrowed from New Century or Home 123) and has lost the use

of his Property, which is measured by rental value rather than sale value." [Complaint at ¶ 36.]

Even viewed in a light most favorable to Plaintiff, the Complaint has failed to state a plausible claim for intentional interference. Although Plaintiff alleges damages in rental value of the Property, the Complaint does not allege the existence of a business relationship or prospective advantage or expectancy as to the rental or sale of the Property before Defendant's alleged interfering conduct. To the extent that Plaintiff argues that the Property itself provided him with an economic opportunity, the Court finds that such an economic opportunity, without more, is not sufficiently definite, specific, and capable of acceptance in the sense that there is a reasonable probability of it maturing into a future economic benefit to Plaintiff. The Court therefore concludes that Count III fails to state a claim upon which relief can be granted, and GRANTS Defendant's Motion with respect to Count III. The Court further finds that any amendment by Plaintiff would be futile. See Harris, 573 F.3d at 737. Count III is HEREBY DISMISSED WITH PREJUDICE.

## IV. **Count IV - Trespass**

The Complaint alleges that, based on all of Plaintiff's allegations, Defendant is also liable to Plaintiff for trespass to the Property. Defendant argues that the Complaint does not allege when the trespass occurred, and therefore does not satisfy

the pleading standards under <u>Iqbal</u> and <u>Twombly</u>.  Defendant

further argues that, in any case, Count IV is untimely because it

accrued on April 30, 2009, at the latest, and is subject to a

two-year limitations period.

"One is subject to liability to another for trespass,

irrespective of whether he thereby causes harm to any legally

protected interest of the other, if he intentionally[:]  (a)

enters land in the possession of the other, [or] . . . (b)

remains on the land[.] . . ."  Restatement (Second) of Torts

§ 158 (1965); <u>see also</u> <u>Memminger v. Summit at Kaneohe Bay Ass`n</u>,

No. 30383, 2013 WL 2149732, at *3 (Hawai`i Ct. App. May 17, 2013)

(discussing Restatement (Second) of Torts § 158 cmt. f).  This

Court has recognized that § 657-7 applies to a claim for trespass

to property.  <u>Aana v. Pioneer Hi-Bred Intern., Inc.</u>, Civil No.

12-00231 LEK-BMK, 2013 WL 4047110, at *22 (D. Hawai`i Aug. 9,

2013) (citing <u>Dunbar v. Cnty. of Maui</u>, CV. No. 07-00107 DAE-BMK,

2008 WL 2622814, at *3-4 (D. Hawai`i July 2, 2008)).  Thus, Count

IV is subject to a two-year statute of limitations.

The Court notes that the Complaint does not contain

allegations specific to Count IV.  The Complaint merely asserts

that, based on the allegations of the Complaint, Defendant is

liable to Plaintiff for trespass.  Even if the Court liberally

construes the Complaint to state a claim for trespass, it would

be untimely under § 657-7.  The Complaint alleges that, as a

result of the Defendant's foreclosure sale on April 30, 2009,

Plaintiff lost title to and possession of the Property.

[Complaint at ¶¶ 32, 34.]  Thus, as of April 30, 2009, when

Defendant purchased the Property at the foreclosure sale,

Plaintiff no longer had an interest in the exclusive possession

of the Property, nor could he claim that Defendant's presence on

the Property was the unauthorized entry onto the land of another.

The Court concludes that Count IV is not sufficiently pled.  In

light of the two-year limitations period under Haw. Rev. Stat. §

657-7, the Court finds that the defects in Count II cannot be

cured by amendment.[11]  See Harris, 573 F.3d at 737.  The Court

therefore GRANTS Defendant's Motion with respect to Count IV,

which is HEREBY DISMISSED WITH PREJUDICE.

**V.   Leave to Amend**

        The Court has dismissed Count II without prejudice.

The Court has also dismissed Count II without prejudice to the

extent that Plaintiff could arguably cure the defects by alleging

facts to support the application of the equitable tolling

doctrine of fraudulent concealment to Count II.  Plaintiff is

granted until **September 20, 2013** to file a motion petitioning the

---

        [11] As set forth *supra* Discussion section I.B., the Complaint
fails to allege affirmative acts on the part of Defendant so as
to toll the statute of limitations with respect to Count I.
Insofar as Plaintiff's argument that the limitations period of
Count IV should also be tolled are based on the same allegations,
the Court finds that equitable tolling does not apply to Count
IV.

magistrate judge for permission to file an amended complaint addressing the deficiencies noted in this Order.  The Court CAUTIONS Plaintiff that, if he fails to timely file a motion seeking leave to file an amended complaint, the claims which this Court has dismissed without prejudice will automatically be dismissed with prejudice.  The Court emphasizes that it has not granted Plaintiff leave to add new parties, claims, or theories of liability.  If Plaintiff wishes to add new parties, claims, or theories of liability, he must either obtain a stipulation from Defendant or file a separate motion seeking leave to amend according to the Rule 16 Scheduling Order.

## CONCLUSION

On the basis of the foregoing, Defendant's Motion to Dismiss Complaint Filed on April 4, 2013, filed May 31, 2013, is HEREBY GRANTED IN PART AND DENIED IN PART.  To the extent that Count I is based on the "continuing violation" doctrine, Count I DISMISSED WITH PREJUDICE.  To the extent that Count I can arguably be cured by amendment with respect to the application of the equitable tolling doctrine, however, Count I is DISMISSED WITHOUT PREJUDICE.  Count II is DISMISSED WITHOUT PREJUDICE. Counts III and IV are DISMISSED WITH PREJUDICE.  Insofar as the Court has dismissed Count II and a portion of Count I in the Complaint without prejudice, the Court GRANTS Plaintiff leave until **September 20, 2013** to submit a motion to the magistrate

judge seeking permission to file an amended complaint consistent
with the terms of this Order.

     IT IS SO ORDERED.

     DATED AT HONOLULU, HAWAII, September 4, 2013.



     /S/ Leslie E. Kobayashi
     Leslie E. Kobayashi
     United States District Judge

**PATRICK LOWTHER V. U.S. BANK N.A.**; CIVIL NO. 13-00235 LEK-BMK;
ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO
DISMISS COMPLAINT FILED APRIL 4, 2013